# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| v.   ) | CRIMINAL NO.  05-00231-CB |
| | CIVIL ACTION NO. 11-00523-CB |
| ANTONIO DEMOND SMITH,   ) | |
| Defendant/Petitioner.   ) | |

## ORDER

This matter is before the Court on a motion to vacate, set aside or correct sentence filed by Petitioner Antonio Demond Smith, a person in federal custody, pursuant to 28 U.S.C. § 2255. (Doc. 205.)  The government has moved to dismiss Petitioner's motion as time barred (Doc. 207), and Petitioner has filed a response to the motion to dismiss (Doc. 211).  For the reasons set forth below, the Court finds that the government's motion to dismiss is due to be granted and, alternatively, that Petitioner's claims are due to be denied on the merits.

**Background**

On November 2, 2005, a jury convicted Petitioner Antonio Demond Smith of conspiracy to commit carjacking (Counts One and Two), carjacking (Counts Three and Five) and using or carrying a firearm during the carjacking offenses (Counts Four and Six).  Petitioner was represented at trial by Assistant Federal Public Defender Lyn Hillman.  After trial and prior to sentencing, both Petitioner and Ms. Hillman filed a motion requesting that counsel be allowed to withdraw due to a conflict.  The Court granted the motion and appointed attorney Art Powell to represent Petitioner.  In a written judgment entered on Jun 12, 2006, Defendant was sentenced to

a total term of imprisonment of 646 months.[1]  Mr. Powell filed a notice of appeal on Petitioner's behalf and continued to represent Petitioner on appeal.  The United States Court of Appeal for the Eleventh Circuit affirmed Petitioner's conviction and sentence in an opinion issued as mandate on May 2, 2008.  No petition for writ of certiorari was filed on Petitioner's behalf.

On September 1, 2011, Petitioner filed a motion to set aside, vacate or correct sentence pursuant to 28 U.S.C. § 2255.  Recognizing that his petition was filed after § 2255's one-year limitations period had expired, Petitioner argued in his motion that the limitations period should be equitably tolled.  In response, the government filed a motion to dismiss the § 2255 motion as untimely.  Petitioner asserts the limitations period should be equitably tolled because his appellate counsel actively misled him by representing that he had filed a petition for certiorari on Petitioner's behalf when, in fact, he had not done so. Petitioner further asserts that he diligently attempted to learn the status of his appeal but was unable to do so until after he was returned to federal custody in November 2010.  On November 17, 2010, he called Mr. Harrell's office and spoke with a secretary who informed him that she could find no indication that counsel had filed anything after the Eleventh Circuit appeal.

**Motion to Dismiss:  Limitations Period & Equitable Tolling**

A motion for relief under § 2255 must be filed within one year of the latest of four enumerated events.  28 U.S.C. § 2255(f)(1)-(4).  Both parties agree that the applicable event in this case is the date the judgment became final.  Because no petition for writ of certiorari was filed, the judgment became final on or about August 2, 2009.  *See Kaufmann v. United States*,

---

[1] The sentence was as follows:  60 months each as to Counts 1 and 2, 262 months each as to Counts 3 and 5 with Counts 1,2 3 & 5 to run concurrently with each other; 84 months as to Count 4 and 300 months as to Count 6, each to run consecutively to each other and to the custody sentences imposed in Counts 1, 2, 3 and 5.

282 F.3d 1336 (11th Cir. 2002) (judgment becomes final either when Supreme Court renders judgment on or denies timely certiorari petition <u>or</u> when time for filing petition expires).

> The statute of limitations can be equitably tolled where a petitioner untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. Equitable tolling is only available if the petitioner establishes (1) extraordinary circumstances and (2) due diligence. Courts need not consider whether extraordinary circumstances exist if a prisoner's delay in filing the motion or petition exhibits a lack of due diligence. Equitable tolling is an extraordinary remedy and is applied sparingly. The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.

*Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007) (internal quotations and citations omitted). Furthermore, the Petitioner cannot rely on mere conclusory allegations to raise an issue of fact with respect to equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011). The Petitioner must also "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *Id.* at 1267. The Eleventh Circuit has held that extraordinary circumstances may be established by evidence of "egregious attorney misconduct." *Downs v. McNeil*, 531 F.3d 1311, 1322 (11th Cir. 2008). Because Petitioner has failed to assert facts that would prove due diligence, the Court need not decide whether the counsel's alleged conduct would, if proved, satisfy the extraordinary circumstances requirement.

> Petitioner relies on the following as evidence of due diligence:
>
> Subsequent to my sentencing on June 12, 2006, I was returned to state custody where I was convicted of 2nd Degree on Ceric Mendenhall and sentenced to 15 years in the Alabama State Penitentiary. I remained in state custody until November 17, 2010, at which time I was transferred beck to federal custody.
>
> When my sentence and convictions were affirmed on appeal by the [Eleventh Circuit] on May 2, 2008, appellate attorney Sidney Harrell assured me that he would be submitting a petition for writ of certiorari to the United States Supreme Court. However, after waiting several months to hear from Mr. Harrell I attempted on several occasions to contact him telephonically, but whoever was answering the telephone refused to accept the collect call. In the State of

3

> Alabama Penal system, all telephone calls are placed collect.  I also sent several letters during this period but Mr. Harrell never responded.
>
> Upon arriving back in federal custody on November 17, 2010, I called Mr. Harrell's office directly.  Although he was not available, I spoke to his secretary and asked if she could check and see whether Mr. Harrell had filed the Supreme Court petition.  She apparently checked a computer and informed me that she could find nothing to indicate that he had filed anything after my direct appeal to the Eleventh Circuit.
>
> On January 24, 2011, I sent a letter to Judge Charles Butler asking him if he could inform me of the status of my appeal and he responded on March 1, 2011 informing me that counsel Harrell had filed my direct appeal to the Eleventh Circuit.  Judge Butler did not say whether a petition for writ of certiorari had been field and I must therefore assume that it was not.

(Petr.'s Decl., Doc. 205 ¶¶ 11-13.)

The Supreme Court has defined "[t]he diligence required for equitable tolling purposes [as] reasonable diligence."  *Holland v. Florida*, __ U.S. ___, 130 S. Ct. 2549, 2565 (2010) (quotations omitted).  Thus, the question is whether Petitioner's allegations, if true, establish that he pursued his rights under § 2255 with reasonable diligence.  For two years, Petitioner believed that his attorney had filed petition for writ of certiorari in the United States Supreme Court.  According to Petitioner's declaration, his attempts to find out the status of that petition consisted of several collect telephone calls to counsel, which were not accepted, and several letters to counsel, which were unanswered.  In *San Martin* the Eleventh Circuit discussed the type of conduct that did not amount to reasonable diligence in similar circumstances:

> [The petitioner] has not shown (or even averred) that he made any attempt to contact the Supreme Court to learn about the resolution of his case; that anyone had agreed to contact him as soon as a decision was made concerning the final disposition of his appeal; that there is any reason the Florida Supreme Court docket was a better source of information about a Supreme Court ruling than the Supreme Court docket itself would have been; or even that he contacted his direct appeal counsel about the pending decision, or anyone else for that matter to complain that his counsel was not responding to him, if that were the case.

4

633 F.3d at 1270.  After a couple of unanswered letters and telephone calls, it should have been apparent to Petitioner that he was not getting the information he needed from counsel, but there is no evidence that he attempted to find out the status of his case from any other source prior to being transferred to federal custody.  Moreover, he has failed to explain why he waited almost ten months between the date he first learned counsel had not filed a petition for certiorari and the date he filed his § 2255 motion.

In sum, Petitioner's claims are time barred.  The doctrine of equitable tolling does not apply because Petitioner failed to act with reasonable diligence to discover and prosecute his claims. Furthermore Petitioner is not entitled to an evidentiary hearing on the issue. Whether to grant an evidentiary hearing on the equitable tolling claim is within the Court's discretion.  *Pugh v. Smith*, 468 F.3d 1295, 1300 (11th Cir. 2006).  Although a hearing sometimes may be necessary to resolve material factual disputes, Petitioner's conclusory allegations do not give rise to the need for a hearing.  *Id*.

**The Motion Is Also Due to Be Dismissed on the Merits**

Petitioner raises two claims in his motion:  (1) ineffective assistance of trial counsel for failing to adequately advise him regarding a plea offer and (2) ineffective assistance of appellate counsel for failing to assert a second *Batson* challenge on appeal.  According to Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings, the Court must dismiss Petitioner's motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  The Court has concluded, after review of the claims asserted in light of the applicable law and the record, that Petitioner is not entitled to relief.

### *Law Governing Ineffective Assistance of Counsel Claims*

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id*. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). In this case, Petitioner's asserts that his Sixth Amendment right to counsel was violated because both trial and appellate counsel rendered ineffective assistance.

To establish that counsel's performance was so deficient as to violate petitioner's right to counsel guaranteed by the Sixth Amendment, petitioner "must show both incompetence and prejudice: (1) [P]etitioner must show that counsel's representation fell below an objective standard of reasonableness and (2) [P]etitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc) (internal quotations and citations omitted). Evaluation of the first prong of an ineffective assistance claim, the reasonableness of counsel's performance, is guided by the principles set forth by the Eleventh Circuit in *Chandler*. First, the standard is *reasonableness* under the prevailing norms of the legal profession. *Id.* at 1313. The question is not whether counsel did what was possible, or even what was prudent but whether he did what was "constitutionally compelled." *Id*. Even when an attorney is shown to have performed unreasonably in his representation of a defendant, it is just as likely as not that his error was harmless. *Johnson v. Alabama*, 256 F.3d 1156, 1177 (11th Cir. 2001). Therefore, a petitioner has a difficult burden to prove the prejudice prong of his ineffective assistance of counsel claims. *Id.* As noted, prejudice

requires proof that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland v. Washington,* 466 U.S. at 694). The Sixth Amendment right to counsel also "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1367, 1384 (2012).

### *The Plea Offer*

According to Petitioner, the government offered a plea bargain that would have allowed Petitioner "to plead to Counts Five and Six and a consequent 30-year sentence in exchange for dropping the other charges." (Pet'r's Br. 12, Doc. 205.)  Petitioner did not accept the plea agreement because: (1) he did not believe that he was guilty of those crimes since he did not personally take the victim's car and (2) he did not understand that he faced a mandatory 25-year consecutive sentence on Count 6 if convicted.  Counsel's duty is to "sufficiently familiarize himself with the facts and the law that [so that] he can advise the defendant meaningfully on available options." *Wiley v. Wainwright,* 793 F.2d 1190, 1194 (11th Cir. 1986).  In the plea bargaining context counsel's *erroneous* advice constitutes unreasonable performance. *See, e.g. Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989).  Petitioner claims that Ms. Hillman never told him "that he could be convicted of aiding and abetting codefendant Harrison's 'taking' of [the victim's] car."  But Petitioner does not allege that counsel misled him, that she incorrectly advised him or that she was in any way unfamiliar with the facts or the law.  He merely asserts that she did not specifically explain the concept of aiding and abetting and how it applied in these circumstances.[2]  Counsel's failure to explain the specific nuances of the law did not render her performance unreasonable.

---

[2] According to the evidence at trial, Petitioner and three codefendants went to the home of Cedric Mendenhall to collect money Mendenhall owed Petitioner for some rims.  When they
(Continued)

7

Petitioner asserts, alternatively, that counsel was constitutionally ineffective because she failed to inform him of the mandatory minimum sentence he faced as to Count 6. Counsel's failure to provide accurate advice about the sentencing ramifications of a guilty plea could amount to unreasonable performance. *See Finch v. Vaughn*, 67 F.3d 909, 916-17 (11th Cir. 1995) (finding ineffective assistance of counsel based on erroneous advice regarding concurrent state and federal sentences). In this case, Petitioner alleges that "[n]o person, including defense counsel Hillman, ever apprised [Petitioner] of the fact that the "PENALTY PAGE" was in error and that he in fact faced a mandatory 25-year consecutive sentence on Count Six if he was also convicted of Count Four."[3] (Pet'r's Br. 13, Doc. 205.) Petitioner argues that he was prejudiced because he would have taken the plea bargain if he had known about the 25-year consecutive sentence. Petitioner's prejudice argument is contradicted by the record. On October 3, 2005, after arraignment and prior to pretrial, Petitioner took part in a mandatory Probation Office conference. Present at that conference were: (1) Probation Officer Beatrice Jones, (2) AUSA John Cherry, (3) Assistant Federal Public Defender Chris Knight (standing in for Ms. Hillman) and the Petitioner, Antonio Demond Smith. (Report on Probation Office Conference, Doc. 49.) According to the report from the conference, Petitioner was informed of the potential guideline

---

found that Mendenhall was not home, they took the three occupants of his house hostage, carjacked a vehicle and placed the hostages in the trunk. Petitioner and one of the codefendants drove to another residence where they found Mendenhall's vehicle. When the codefendant started the Mendenhall's vehicle without a key, Mendenhall came outside. Petitioner got out of his truck with a gun and demanded the keys from Mendenhall. Petitioner hit Mendenhall with the gun, the two got into a tussle, and Mendenhall ran back toward the house. Petitioner shot at Mendenhall, wounding him, but Mendenhall managed to get inside. The codefendant began driving off in Mendenhall's vehicle but jumped out when a police car arrived.

[3] The penalty page attached to the indictment indicated that the penalty for Counts 4 and 6 was "10 yrs/$250,000/3 yrs SRT/ $100 SA."

8

ranges he faced if convicted along with the statutorily required minimum sentences for Count 4 (10 years) and Count 6 (25 years), which would modify the guideline range.  (*Id.* Worksheet D.) Because the record demonstrates that Petitioner was informed about the 25-year mandatory consecutive sentence, he cannot prove that he was prejudiced by counsel's alleged failure to advise him of this fact.

### *Appeal of the Batson Ruling*

At trial, defense counsel objected to the government's strike of two African American jurors, Juror No. 143[4] and Juror No. 129.  The government offered race-neutral reasons for both strikes.  Juror 129 was struck because she watched science fiction on television, and the prosecutor believed that people who watch science fiction have ideas different from the norm.  Juror No. 143 was struck because she was a young woman.  The prosecutor also struck two young women who were white, and he stated that he struck all three because it was his experience "as a prosecutor for 26 years. . . that young women, white or black, are sometimes more sympathetic to a young defendant."  (Tr. 5, Doc. 178.)  The Court denied the *Batson* challenge for two reasons.  First, the defense failed to establish a *prima facie* case of discrimination.  Second, the proffered reasons were race-neutral reasons.[5]  (*Id.* 7.) Counsel raised a *Batson* claim on appeal but based that claim solely on the prosecution's strike of Juror 129 (the science fiction juror).

Petitioner claims that appellate counsel rendered constitutionally ineffective assistance because he did not also raise a *Batson* claim as to Juror 143 (the young woman).  The *Strickland*

---

[4] This juror is also referred to in the record as Juror 123.

[5] By denying the challenge the Court implicitly found that the prosecution did not engage in intentional discrimination, though that finding was not explicitly stated on the record.

test applies to an ineffective assistance of counsel claim "whether we are examining the performance of counsel at the trial or appellate level. *Eagle v. Linahan*, 279 F.3d 926, 938 (11th Cir. 2001). Even if counsel's failure to raise this issue amounts unreasonable performance, Petitioner cannot prove prejudice.

A *Batson* challenge involves three steps. First, the party raising the challenge must establish a *prima case* of discrimination. *United States v. Houston*, 456 F.3d 1328, 1335 (11th Cir. 2006). If this burden is satisfied, then the party exercising the strike (in this case the prosecution) must provide a race-neutral reason for its strike. *United States v. Edouard*, 485 F.3d 1324, 1342-43 (11th Cir. 2007). If the court finds this reason to be credible, then it must determine whether, in light of all the facts, the strike was racially motivated. *Id.* at 1343. At all times the party challenging the strike bears the burden of proving racial discrimination. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1038 (11th Cir. 2005).

A trial court's *Batson* decision is reviewed for clear error, *Edouard,* 485 F.3d at 1341, and there is no clear error in this case. First, this Court found that the defense had failed to establish a *prima facie* case. In determining whether the a *prima facie* case has been established, courts look at several factors, including whether members of the racial group served unchallenged, whether the striker struck as many of the racial group as the striker had strikes, whether there is a substantial disparity between the percentage of jurors struck and the percentage of their representation on the venire and whether there is a substantial disparity between the percentage struck and the percentage of representation on the jury. *Ochoa-Vasquez*, 428 F.3d at 1045. In this case, the venire was made up of 33 jurors, 5 of whom were African American. The prosecution used 2 of its 6 peremptory challenges to strike African American jurors, and 3 African Americans served on the jury. In terms of percentages, the prosecution used

33% of its strikes to challenge 40% of the African American members who, altogether, comprised 15% of the jury venire. In the end, African Americans comprised 20% of the jury selected. Because none of these factors give rise to a presumption of discrimination, the Court's finding of no *prima facie* case was not clearly erroneous.

The Court alternatively found, explicitly, that the prosecutor's explanation regarding Juror 143 a race-neutral reason and, implicitly, that the prosecution's strike was not racially motivated. A trial court's decisions regarding the believability of the prosecutor's explanation and its finding of no discrimination are factual matters entitled to great deference by the appellate court. *United States v. Edouard*, 485 F.3d at 1343 ("great deference afforded to the determinations of trial courts regarding the believability of the prosecutor's race-neutral explanations for its strikes"); *Hollingsworth v. Burton*, 30 F.3d 109, 119 (11th Cir. 1994) ("trial court's finding of no discrimination is a fact finding, ordinarily entitled to great deference on review"). Nothing in the record supports a conclusion that either of these findings was clearly erroneous.

### Conclusion

Petitioner's motion was filed after the one-year limitations period expired, and equitable tolling does not apply. Consequently, the government's motion to dismiss (Doc. 207) Petitioner's § 2255 motion is due to be and hereby is **GRANTED**. Alternatively, even if Petitioner's motion was timely filed, that motion (Doc. 205) is due to be and hereby is **DENIED** because the claims asserted therein are without merit.

### Certificate of Appealability Denied

Rule 11 of the Rules Governing Section 2255 Proceedings requires that this Court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A

certificate of appealability may be issued only where the applicant has made a 'substantial showing of the denial of a constitutional right.'" *Hardwick v. Singletary*, 126 F.3d 1312, 1313 (11th Cir. 1997).  This standard is "materially identical" to the standard governing certificates of probable cause under the former 28 U.S.C. § 2253.  *Id.*; *accord Slack v. McDaniel*, 579 U.S. 473 (2000).  In the context of certificates of probable cause, the Supreme Court has defined the requirement of "a substantial showing of the denial of a federal right" to mean that the applicant must raise an issue that is debatable among jurists of reason.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983).  Neither the equitable tolling issue nor the claims raised in petitioner's § 2255 motion meet this threshold.  Accordingly, the certificate of appealability is **DENIED**.

**DONE** and **ORDERED** this the 9th day of October, 2012.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**